**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| JPMorgan Securities LLC, | No. CV-23-00651-PHX-JAT |
| Plaintiff, | **ORDER AND PRELIMINARY INJUNCTION** |
| v. | |
| James Vallery, | |
| Defendant. | |

Pending before the Court is Plaintiff's motion for temporary restraining order (TRO) and preliminary injunction (PI), with notice. Defendant has responded and Plaintiff has replied.

In brief summary, Defendant was previously an employee of Plaintiff. Defendant left that employment and is now employed by a competitor in the same industry. Plaintiff claims, in broad terms, that Defendant is wrongfully taking clients with him. Defendant disputes that his actions violate any agreements or laws. Plaintiff seeks an injunction to prevent Defendant from "soliciting" clients; however, it is unclear whether the parties are using a common language as to what constitutes "soliciting." Plaintiff further seeks a mandatory injunction requiring Defendant to return Plaintiff's customer information. Defendant disputes having or taking any customer information.

**I.    Legal Standard**

A plaintiff seeking a preliminary injunction must establish that:

[1] he is likely to succeed on the merits,

>[2] he is likely to suffer irreparable harm in the absence of preliminary relief,
>
>[3] the balance of equities tips in his favor, and
>
>[4] an injunction is in the public interest.

*American Trucking Associations, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (citing *Winter v. Natural Resources Defense Council*, *Winter v. Natural Resources Defense Council*, 555 U.S. 7, 20 (2008)). If Plaintiff cannot qualify for a PI applying the *Winter* factors, Plaintiff may use an alternative formulation: "A preliminary injunction is appropriate when a plaintiff demonstrates ... that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor.... Of course, plaintiffs must also satisfy the other *Winter* factors." *Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (2011) (quoting *Lands Council*, 537 F.3d at 987). In other words, this alternative formulation of prongs 1 and 3 do not relieve Plaintiff of the burden of meeting prongs 2 and 4. The standard for issuing a TRO is the same as that for issuing a preliminary injunction. *See Brown Jordan Int'l, Inc. v. The Mind's Eye Interiors, Inc.,* 236 F.Supp.2d 1152, 1154 (D. Haw. 2007).

The forgoing is the standard for issuing a prohibitory injunction which preserves the status quo. *Stanley v. Univ. of S. Calif.*, 13 F.3d 1313, 1320 (9th Cir. 1994). A mandatory injunction "'goes well beyond simply maintaining the status quo pendente lite [and] is particularly disfavored.'" *Anderson v. United States*, 612 F.2d 1112, 1114 (9th Cir.1979) (quoting *Martinez v. Mathews*, 544 F.2d 1233, 1243 (5th Cir.1976)). When a plaintiff seeks a mandatory preliminary injunction, the Court should deny such relief "unless the facts and law clearly favor the moving party." *Id*.

**II.     Plaintiff's Motion**

Plaintiff argues that a PI may issue based on any count in the complaint. (Doc. 3 at 6). While this is generally true, in this case the complaint contains 9 separate causes of action yet Plaintiff did not specify which of the 9 form the basis for the injunction request. Having read the *complaint* as a whole, the Court believes Plaintiff is seeking injunctive relief on Count I (Breach of Contract), Count II (the Arizona Uniform Trade Secrets Act),

Count III (Conversion), Count IV (Breach of Fiduciary Duty), Count V (Breach of the Duty of Loyalty), Count VI(a) Intentional Interference with Actual and Prospective Economic Advantage and Business Expectancy, Count VI(b) Negligent Interference with Actual and Prospective Economic Advantage and Business Expectancy, Count VII (Unfair Competition), Count VII (Violation of the Federal Defend Trade Secrets Act). Not surprisingly, each of these causes of actions has its own elements on which Plaintiff would have to show a likelihood of success on the merits to be entitled to a TRO or PI. Unfortunately, Plaintiff did not cite or apply the elements of each cause of action (much less all causes of action) in the *motion* to show it is entitled to a TRO or PI. (*See* Docs. 2 and 3). Specifically, in the motion and supporting memorandum Plaintiff only references an alleged breach of contract (Doc. 3 at 6-10), the Arizona Uniform Trade Secrets Act (Doc. 3 at 10-11), unfair competition (Doc. 3 at 11-12), and the Defend Trade Secrets Act (Doc. 3 at 12-13). To the extent Plaintiff impliedly seeks injunctive relief on Count III (Conversion), Count IV (Breach of Fiduciary Duty), Count V (Breach of the Duty of Loyalty), Count VI(a) Intentional Interference with Actual and Prospective Economic Advantage and Business Expectancy, or Count VI(b) Negligent Interference with Actual and Prospective Economic Advantage and Business Expectancy, relief is denied for failure to show a likelihood of success on the merits or serious questions going to the merits.

### A.   Non-Solicitation

The contract at issue in this case is Defendant's employment agreement with Plaintiff. Plaintiff alleges that the employment agreement, "contains post-employment restrictive covenants prohibiting him from soliciting JPMorgan's clients for a one-year period after the termination of his employment and requiring him to maintain the confidentiality of JPMorgan's Confidential Information."[1] (Doc. 3 at 2). Plaintiff argues at length that this "non-solicitation" or "anti-piracy" provision is enforceable under

---

[1] Specifically, Plaintiff seeks an injunction that prohibits Defendant from: "soliciting, attempting to solicit, inducing to leave or attempting to induce to leave any JPMorgan client serviced by Defendant at JPMorgan or whose name became known to Defendant by virtue of his employment with JPMorgan (or any of its affiliates or predecessors in interest), excluding only those clients they [sic] formally serviced as broker of record at their [sic] prior firm" (Doc. 2-1 at 2).

Arizona law (Doc. 3 at 7-9) and New York law (Doc. 3 n. 4) (the choice of law provision in the agreement requires the application of New York law).

Defendant responds and does not dispute any of the foregoing. (*See generally* Doc. 18). Instead, Defendant makes three primary arguments. First, Defendant argues that Plaintiff has not shown that Defendant has solicited any clients. Second, Defendant argues that there is a space between "soliciting former clients" and "no contact with former clients;" and that space is "announcing your departure to former clients." Defendant claims that all of his contacts with former clients have been within this permissible space of announcing his departure. Third, Defendant argues that he did not take any confidential information belonging to Plaintiff with him, and therefore, there is nothing to return.

Plaintiff responds and argues that the Court should not believe Defendant's denials. However, Plaintiff does not acknowledge or address Defendant's argument that he is allowed to contact former clients to "announce his departure." Plaintiff re-urges its argument that it is entitled to an injunction to prohibit "solicitation" (though that word is undefined) by Defendant. With respect to the return of information, Plaintiff seeks "expedited discovery" which will be addressed below. However, to the extent Defendant argues that he has nothing, and therefore, there is nothing for him to return, Plaintiff does not address that argument.

Thus, on this record, the Court is struggling to determine what is in dispute. Defendant strongly opposes an injunction issuing; however, the Court cannot see why there would be such a strong opposition to enjoining Defendant from doing something he claims he is not doing (and has never done). Conversely, Plaintiff ignores Defendant's argument that he may "announce his departure." Thus, the Court cannot tell if Plaintiff agrees that Defendant may announce his departure and the dispute is really whether he is going beyond that; or whether Plaintiff argues that Defendant may not contact clients at all because any contact amounts to a "solicitation." Plaintiff's proposed form of injunction seeks to enjoin Defendant from: "soliciting, attempting to solicit, inducing to leave or attempting to induce to leave any JPMorgan client serviced by Defendant at JPMorgan…" (Doc. 2-1). Again,

however, critical words like "solicit" and "induce" remain undefined.

The employment agreement in this case states in relevant part:

> §8. NON-SOLICITATION OF EMPLOYER'S CUSTOMERS, VENDORS OR SUPPLIERS
> a. You understand and acknowledge that JPMC considers its client and customer relationships, as well as its relationships with its vendors and suppliers, important and valuable assets. Accordingly, in consideration of and as a condition of your employment, continued employment, access to trade secrets and Confidential Information, specialized training and mentoring, and other consideration provided herein, you understand and agree for a period of twelve (12) months after your employment with JPMC terminates for any reason that you may not on your own behalf or that of any other persons or entities, directly or indirectly solicit or attempt to solicit, induce to leave or divert or attempt to induce to leave or divert from doing business with JPMC, any then current customers, clients, vendors, suppliers, or other persons or entities that were serviced by you or whose names became known to you by virtue of your employment with JPMC, or otherwise interfere with the relationship between JPMC and such customers, clients, vendors, suppliers, or other persons or entities.

(Doc. 4 at 17).

Plaintiff offers the following alleged interactions as examples of "solicitation" allegedly perpetrated by Defendant:

> (a) that Defendant told one client that Defendant "had more than three or four investment models at Morgan Stanley, so he would have more options with her money, implying that JPMorgan only has three or four investment "models" to offer clients" (Elliott Dec. ¶ 6);
> (b) that Defendant told other clients that his "hands were tied" at JPMorgan (Elliott Dec. ¶ 7);
> (c) that Defendant "had better options and more freedom for her at Morgan Stanley" (Elliott Dec. ¶ 9);
> (d) that since Defendant "had already put a plan together for the client at JPMorgan, he could continue that plan at Morgan Stanley" (Elliott Dec. ¶ 12);
> (e) that Defendant "had offered to take a second look at [a client's] accounts" (Elliott Dec. ¶ 14);
> (f) that Defendant had said to another client that "he can get the client more income at Morgan Stanley" (Elliott Dec. ¶ 15); and
> (g) that "[i]n the weeks leading up to his resignation, Defendant took three of his top clients (by assets) to lunch before he departed (two in February 2023 and one in March 2023)," with one of the lunch clients stating that Defendant told him "I don't like how your advisors have their hands tied on certain products," and another lunch client stated that Defendant "suggested that they play golf to discuss" the "great plans" Defendant had. (Elliott Dec. ¶ 45).

(Doc. 24 at 2).[2]

---

[2] The Court notes that Defendant raises evidentiary objections to these statements. The Court will address those objections below but accepts these representations as true for purposes of this section of this Order.

1    Preliminarily the Court interprets Plaintiff's use of these examples as effectively
2 arguing that "soliciting" requires something more than mere contact. Thus, the Court
3 accepts Defendant's argument that Plaintiff is not seeking, and cannot seek, an injunction
4 to prohibit Defendant from any and all contact with Plaintiff's clients. However, in the
5 Court's view, these examples from Plaintiff highlight the undefined area of "soliciting" or
6 "inducement".

7    Specifically, Plaintiff seems to believe these alleged actions on the part of Defendant
8 are so obviously solicitation that no further argument is necessary. (Doc. 24 at 2).
9 Defendant does not specifically deny that he took these actions, not does he specifically
10 argue these actions are not solicitations; however, he more broadly argues that he did not
11 engage in solicitation thereby impliedly either disputing that he engaged in the foregoing
12 or admitting that he engaged in the foregoing but denying it is solicitation. Again, the
13 parties' arguments on this critical point are ambiguous at best.

14    The Court finds that Defendant has failed to oppose Plaintiff's argument that: 1)
15 Defendant signed the employment agreement; 2) the employment agreement is legally
16 enforceable under either Arizona or New York law; and 3) the employment agreement
17 prohibits solicitation and/or inducement of clients of Plaintiff (as client is defined in the
18 parties' agreement). The Court finds that Plaintiff has shown a likelihood of success on
19 the merits that Defendant should not be allowed to solicit clients of Plaintiff (as client is
20 defined in the parties' agreement) to leave Plaintiff. The Court finds Plaintiff has shown
21 irreparable harm in the form of the clients who have already left and other clients who have
22 the possibility of leaving. The Court finds that, in light of the limitations of the non-
23 solicitation clause, specifically that it is not a non-compete that stops Defendant from any
24 work, that it is only for one year, and that it does not include any clients Defendant had
25 prior to his employment with Plaintiff, the balance of equities of giving Plaintiff the
26 opportunity to keep the clients tips in Plaintiff's favor.

27    Finally, the Court finds the public interest neither favors not disfavors an injunction.
28 Specifically, on a macro level public policy favors an injunction to promote the

enforcement of contracts and the protection of trade secrets of companies from being taken by departing employees. *See Metso Mins. Indus. Inc. v. Oakes*, No. CV-14-00013-PHX-DGC, 2014 WL 1632927, at *3 (D. Ariz. Apr. 23, 2014). However, on a micro level, public policy does not favor an injunction because the clients should have unencumbered freedom to use the financial advisor of their choice and restraining that choice is not the best public policy for these particular clients. Further, while Plaintiff argues "commerce" is benefitted by an injunction by allowing the employer to thrive in the industry, "commerce" is hurt by not allowing the employee to thrive. Finally, although not binding here, the Federal Trade Commission has out for comment a proposed rule change that would ban many restrictive covenants in employment, showing at a national level, they are disfavored. *See* https://www.ftc.gov/legal-library/browse/federal-register-notices/non-compete-clause-rulemaking (last visited April 27, 2023). Thus, the Court finds that the public policy both favors and disfavors an injunction.

For these reasons, the Court finds Plaintiff is entitled to an injunction that Defendant cannot solicit Plaintiff's clients as client is defined in the parties' contract. However, the Court cannot issue an injunction that the Court does not understand the scope of and realistically expect Defendant to comply. Therefore, the Court must narrow the scope of Plaintiff's request to limit "solicitation" to more concrete parameters.[3]

The dictionary defines solicit as "to approach with a request or plea" or "to urge strongly" or "to entice or lure" or "to try to obtain by unusually urgent requests or pleas." https://www.merriam-webster.com/dictionary/solicit (last visited April 27, 2023). Turning to the factual allegations in the Elliott declaration, items (a), (b) and (c) (quoted above) allege Defendant implied or stated that better investment options were present at his new

---

[3] The Court is merely undertaking to more precisely define "solicit;" and therefore, the Court does not believe it is "blue-penciling" the agreement. Notably, under Arizona law, courts may "blue pencil" agreements in limited circumstances. *Valley Medical Specialists v. Farber,* 194 Ariz. 363, 982 P.2d 1277, 1286 (1999) ("Arizona courts will 'blue pencil' restrictive covenants, eliminating grammatically severable, unreasonable provisions."). Under New York law, courts may also blue pencil agreements, albeit under different parameters. *Wrap-N-Pack, Inc. v. Eisenberg*, No. 04CV4887(DRH)(JO), 2007 WL 952069, at *7 (E.D.N.Y. Mar. 29, 2007).

employer. There is no request, plea or urgency to those statements. However, one could argue that the statements were inviting the client to connect-the-dots that more investment options is better. And that better investment options would lead to better investment returns. Thus, if the clients connected all those dots, they might be "enticed" to move with Defendant. The Court finds these examples are more than the mere "announcing of his departure" that Defendant claims is permissible. However, a jury could decide the case either way on whether this was a "enticement" which is a form of a solicitation. A fact dispute that a jury could reasonably decide in either party's favor does not show a *likelihood* of success on the merits. However, it does show *serious* questions going to the merits.

More clearly, however, item (f) of the Elliott declaration shows a solicitation. In item (f) Defendant allegedly told a client he could get them more money at his new employer. This statement crosses the line into a solicitation because there are no dots to connect that Defendant is telling the client that moving would make the client more returns on the investments.

The Court finds item (g) of the Elliot declaration is irrelevant. The alleged behaviors in item (g) occurred pre-departure. These behaviors that are not covered by the contract which states that the non-solicitation clause is applicable upon termination.

Synthesizing the parties' positions, the Court finds that Defendant may speak to clients of Plaintiff in limited circumstances. However, to prevent crossing the line into solicitation, Defendant may only say where he currently works, and discuss things completely unrelated to work (like the weather). Defendant may not compare the two companies and their products to attempt to entice the clients to move to the new firm. Defendant may not volunteer information on why he left, nor ask or encourage the client to move to the new firm. However, if a client, unsolicited, approaches Defendant about continuing to use his services, Defendant does not have to turn the client away.

Although Plaintiff devotes its entire argument in its motion to the word "solicit", the Court notes that both the employment agreement and the proposed form of injunction

- 8 -

seek to include an additional behavior: inducing.[4] The Court finds that inducing is encompassed by the above definition of solicitation and will not be included in the injunction because it is duplicative.

### B.     Client Lists/Customer Information

Regarding Plaintiff's claim that Defendant took Plaintiff's customer information, Plaintiff seeks an injunction to mandatorily require Defendant to: "return to JPMorgan or its counsel all records, documents and/or information in whatever form (whether original, copied, computerized, electronically stored or handwritten) pertaining to JPMorgan's clients, employees and business, within 24 hours of notice to Defendant or his counsel of the terms of this Order." (Doc. 2-1 at 2). And to prohibit Defendant from: "using, disclosing or transmitting for any purpose JPMorgan's documents or materials and/or confidential and proprietary information pertaining to JPMorgan, JPMorgan's employees, and/or JPMorgan's clients." (*Id.*).[5]

As indicated above, Defendant claims it did not take any information, therefore there is nothing to return. Plaintiff claims Defendant "accessed" confidential information prior to departure, (Doc. 3 at 3) and vaguely says that Plaintiff's "client information qualified for trade secret protection" (Doc. 3 at 13), but Plaintiff never *specifically* alleges what exactly Plaintiff claims Defendant has in his possession to return.

Plaintiff generally brings this return of property claim under 4 theories: 1) breach of contract in that the employment agreement required Defendant not to take confidential information (Doc. 3 at 8-9), the Arizona Uniform Trade Secret Act (Doc. 3 at 10), unfair

---

[4] Notably, the employment agreement also prohibits "diverting", but the injunction sought by Plaintiff does not seek to enforce this word. Perhaps they "voluntarily" blue penciled it out. Or perhaps this was an oversight. Regardless, the Court will not issue an injunction that includes diverting.

[5] This requested language from Plaintiff in the proposed form of order covers four categories of documents: 1. Plaintiff's documents or materials; 2. Plaintiff's confidential and proprietary information about itself; 3. Plaintiff's confidential and proprietary information regarding Plaintiff's employees; and 4. Plaintiff's confidential and proprietary information regarding Plaintiff's clients. In its motion, Plaintiff makes no argument for including categories 1-3 in any injunction. The arguments made are solely with regard to category 4. Thus, to the extent the proposed form of order could be interpreted as a request for this additional injunctive relief, the Court finds that Plaintiff has failed to show a likelihood of success or serious questions on the merits with respect to items 1-3.

competition (Doc. 3 at 11) and the Federal Defend Trade Secrets Act (Doc. 3 at 12-13).

Regarding Plaintiff's first theory, the employment agreement (Doc. 4 at 17) treats client lists as confidential information and states that Plaintiff will not use the lists for his own benefit or the benefit of a third party. However, in the motion and supporting memorandum, Plaintiff does not state with particularity that Defendant has any such information in a tangible format in his possession. To the extent Plaintiff is arguing Defendant has this information in his brain, "As another court has rather memorably put it, absent a special and enforceable duty, an alert salesperson is not required to undergo a prefrontal lobotomy." *Amex Distrib. Co. v. Mascari*, 724 P.2d 596, 603 (Ariz. Ct. App. 1986) (citing *Fleming Sales Co., Inc. v. Bailey*, 611 F. Supp. 507, 514 (N.D. Ill. 1985)). Thus, Plaintiff has failed to show a likelihood of success or serious questions under the breach of contract theory.

Regarding the Arizona Uniform Trade Secrets Act, Plaintiff cites cases from Arizona that have held that client lists are trade secrets. However, Plaintiff makes no argument under these cases that its "client list" in this case is a trade secret under the elements required by Arizona law, or that Defendant is in possession of a particular list. Moreover, Plaintiff almost tacitly admits the list is not a trade secret by arguing that even if the list is not technically a trade secret, it is still protectable under the contract. (Doc. 3 at 11). Thus, Plaintiff has failed to show a likelihood of success or serious questions on Arizona Uniform Trade Secrets Act theory.

Regarding unfair competition, Plaintiff argues that former employees must "maintain" confidential information after departing employment. (Doc. 3 at 11). However, Plaintiff fails to identify the elements of an unfair competition claim under Arizona law, or show how Plaintiff is likely to succeed on each element. Further, Plaintiff fails to define whether "maintaining" information confidentially means confidential from the "public" or confidential from the employee's own use. (Plaintiff cites a California case applying California law on this point, but there is no argument California law governs this case). Thus, Plaintiff has failed to show a likelihood of success or serious question on the unfair

competition theory.

Finally, Plaintiff argues that a client list is a trade secret under the Federal Defend Trade Secrets Act. Again, Defendant claims that he did not take any client list; therefore, he has nothing to return or stop using. Plaintiff, in its reply, does not directly address this point. Instead, Plaintiff argues that it seeks expedited discovery in this case seeking to: take Defendant's deposition, obtain a copy of all communications Defendant has had with Plaintiff's clients since he resigned, and perform an "inspection" of Defendant's computers and electronic devices. (Doc. 24 at 5).

Defendant opposes any discovery because the FINRA arbitration rules generally do not permit certain kinds of discovery (like a deposition) and the FINRA rules do not allow expedited discovery. (Doc. 19 at 10). Defendant concludes that Plaintiff is just trying to get around the FINRA rules. Plaintiff concedes that the FINRA rules would not permit Plaintiff's requested discovery in the context of arbitration, (Doc. 24 at 4) but argues that it can get expedited discovery in support of its request for an injunction.

Generally, the Court finds that Plaintiff is likely to succeed on the merits that if Defendant has any cultivated client lists of Plaintiff, those lists would be protectable under the Defend Trade Secrets Act. However, Plaintiff cannot show a likelihood of success or serious question on the merits because Plaintiff has not shown, or even alleged, that Defendant has in his possession a particular client list or compilation of client information.

Regarding Plaintiff's request to take discovery to prove this claim, normally a case would proceed to discovery and, even without an expedited discovery order, Plaintiff could fairly quickly learn what information, if any, is in Defendant's possession. However, here Defendant moved to compel arbitration, and Plaintiff does not appear to oppose arbitration (Doc. 24 at 5-6 "JPMorgan has no issue with its obligation to arbitrate with Defendant after this proceeding."). Unfortunately, Plaintiff is again opaque as to what "after" means. In other words, the Court is unclear if Plaintiff means all 9 causes of action in this case are subject to arbitration, so "this proceeding" means only the request for injunctive relief, or if Plaintiff believes one of more of the 9 claims is not subject to arbitration, so "after"

1  means after the resolution of the non-arbitrable claims. If it is the former, i.e., Plaintiff is
2  conceding all 9 claims must go to arbitration any only the potential remedy of a TRO or PI
3  does not, then the Court agrees with Defendant that allowing discovery in this case is really
4  an end-run around the FINRA rules. The Court finds getting around the FINRA rules is
5  not good cause to allow discovery in this case.

6  For the foregoing reasons, the Court will deny the request for expedited discovery
7  and deny Plaintiff's request for an injunction to require Defendant to mandatorily "return"
8  confidential client information that Defendant denies having. Further, the Court denies
9  Plaintiff's request for an injunction to stop Defendant from using confidential client
10 information (except to the extent such use would be in furtherance of a solicitation, which
11 will be enjoined; though again Defendant denies having such information).

### C.     Evidentiary Objections

Defendant objects and moves to strike much of the evidence in Plaintiff's motion. First, Defendant moves to strike legal research, in the form of court opinions, attached to Plaintiff's motion. The Court has reviewed the cases the Court deems necessary to resolve the pending motion. There is no need to strike the opinions under Federal Rule of Civil Procedure 12(f).

Second, Defendant moves to strike much of the Elliott declaration arguing it is hearsay. (Doc. 18 at 16). Defendant is correct that much of the affidavit contains hearsay in the form of what clients told Elliott transpired. Notably, Defendant does not dispute that the facts about client interactions listed in the Elliot declaration actually transpired. Instead, Defendant again re-urges his argument that he "did not solicit" any clients. The Court again is unclear whether Defendant is admitting that the client interactions recounted in the Elliott declaration occurred, but disputes that they amount to a solicitation; or is admitting that the interactions would amount to a solicitation, but is denying such interactions occurred.

The only way for the Court to resolve this evidentiary dispute would be to have a hearing. In such hearing, Defendant would have to testify, which would be akin to

overruling Defendant's objection to allowing expedited discovery to take his deposition. Further, to overcome the hearsay issue, Plaintiff would need to subpoena each client whose story forms to basis for the Elliott declaration to testify at the hearing. Defendant would also need to subpoena his clients who tell a contrary version of the story both for "solicitation" issue and the unclean hands issue discussed below.

While the Court has not taken a deep dive into the FINRA rules, from an overview perspective, the rules seem to be targeted at protecting clients. The Court can see no benefit to the clients by dragging them to federal court via a subpoena to testify in this dispute. Thus, much like the Court is not inclined to allow discovery because such discovery appears to circumvent the FINRA rules, the Court is similarly not inclined to inconvenience the clients because such an imposition on the clients is inconsistent with the FINRA rules.

On this point, and turning back to Plaintiff's request for expedited discovery, the Court notes that the discovery proposed by Plaintiff is completely one sided. Unilateral discovery by only one party is not how discovery, expedited or otherwise, works under the Federal Rules. As indicated above, Plaintiff does not propose depositions and expedited written discovery be available to both parties, instead Plaintiff argues this Court should allow Plaintiff to: take Defendant's deposition, obtain a copy of all communications Defendant has had with Plaintiff's clients since he resigned, and perform an "inspection" of Defendant's computers and electronic devices. (Doc. 24 at 5). However, were the Court to allow expedited discovery, the Court would allow reciprocal discovery to Defendant to allow, for example, the deposition of Ms. Elliott to learn the client names that underlie her declaration; and, as necessary allow Defendant to take those clients' depositions. The Court would further allow Defendant to do discovery of Ms. Elliott and other clients for Defendant's unclean hands defense discussed more fully below. Again, all of these impositions on the clients seems to the Court to be completely inconsistent the spirit of the FINRA rules, and for this alternative reason, the Court will not allow expedited discovery.

Because the Court is not allowing expedited discovery, which Defendant opposes, and is not proceeding to a preliminary injunction hearing due to the fact that Court will not

1  require all these clients to come testify, the Court will not strike the hearsay in Ms. Elliott's
2  declaration.   Defendant's failure to argue that anything Ms. Elliott has said is untrue, or
3  did not transpire, leads the Court to believe that this evidence could be converted to an
4  admissible format at a preliminary injunction hearing.  In the context of summary
5  judgment, the Court of Appeals has instructed this Court to not strike hearsay evidence (in
6  some circumstances) if the evidence could be converted to an admissible format by trial.
7  *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003); *see also* Fed. R. Civ. P. 56(c)(2).
8  Defendant does not dispute that if the Court highly inconveniences the clients by making
9  them come testify on an expedited basis, this evidence could all be converted into an
10 admissible format.  The evidentiary issue with hearsay is reliability.  Because Defendant
11 does not contest reliability, the Court will not strike the declaration or refuse to consider
12 the evidence therein.

13 Notably, this Court's decision to not conduct a hearing to resolve these evidentiary
14 issues is largely dependent on the fact that the parties concede that they must go to an
15 expedited FINRA arbitration within 15 days (Doc. 24 at 6) which will resolve the issue of
16 permanent injunction relief.  In other words, the Court finds that having an evidentiary
17 hearing to the inconvenience of so many people is not justified when the parties are in
18 agreement that another body with jurisdiction is going to address this same issue within 15
19 days.

20 **D.    Unclean Hands**

21 Defendant raises the defense of unclean hands arguing that Plaintiff has violated the
22 FINRA rules themselves by refusing to honestly give clients his contact information.
23 Defendant argues that this failure to act in compliance with the FINRA rules should bar
24 any injunctive relief.  (Doc. 18 at 12-14).  In its reply, Plaintiff completely ignores these
25 allegations about Ms. Elliott's alleged-FINRA-violative behavior.  Further, Plaintiff does
26 not brief the issue of unclean hands and/or its applicability to this case.

27 An injunction is "an equitable remedy that does not issue as of course."  *Amoco*
28 *Production Co. v. Village of Gambell, Alaska*, 480 U.S. 531, 542 (1987).  A party "who

seeks equity must do equity." *County Sanitation Dist. No. 2 of Los Angeles County v. Inland Container Corp.*, 803 F.2d 1074, 1080 (9th Cir. 1986). In order to obtain an injunction in this case, Plaintiff must have "acted fairly and without fraud or deceit as to the controversy in issue." *Adler v. Fed. Republic of Nigeria*, 219 F.3d 869, 877 (9th Cir. 2000). Under the unclean hands doctrine, a court will not grant equitable relief to a party "tainted with inequitableness or bad faith relative to the matter in which he seeks relief...." *Id.* Bad intent is the essence of the unclean hands defense. *Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.*, 890 F.2d 165, 173 (9th Cir. 1989).

Plaintiff's failure to brief this issue, factually or legally, again creates an ambiguity in this case as to whether Plaintiff is tacitly admitting Ms. Elliott is refusing to give out the contact information, and/or admitting such behavior would violate the FINRA rules. However, Plaintiff re-urges its request for an injunction in its reply, so it is impliedly arguing that the doctrine of unclean hands should not bar injunctive relief in this case even though Plaintiff makes no argument on this point.

As discussed above, the Court will issue an injunction on the solicitation issue based on the employment contract and the alleged breach thereof. The Court finds that the claimed FINRA violative behavior by Ms. Elliott, if true, would not negate the contract, nor does it represent a breach of the contract. In this limited context, the Court will not apply the unclean hands defense because the issue about which Ms. Elliott allegedly does not have clean hands is not the claim on which the injunction will issue. Further, the scales are tipped against Defendant by Defendant's robust opposition to expedited discovery in this case. The Court cannot find Defendant to have proved this evidentiary issue without discovery and an evidentiary hearing. Again for the reasons stated above, the Court is unwilling to require the clients to whom Ms. Elliott allegedly refused to provide contact information to be subpoenaed to testify in federal court. And for this further reason, the Court will not apply the affirmative defense of unclean hands to block an injunction in this case.

**III.   Motion to Compel Arbitration**

As alluded to above, Defendant has moved to complete arbitration. As discussed above, Plaintiff has conceded that some portion (or perhaps all) of this case must go to arbitration. Thus, the Court is unclear whether there is a dispute on this motion. Thus, Plaintiff must respond to the motion to compel arbitration (Doc. 22) within 21 days of this Order. Consistent with the Court's understanding that following the issuance of this injunction the parties will receive expedited consideration before a FINRA panel within 15 days, the response must address the status of those proceedings as well as explain whether the motion to compel may be granted as to the entirety of this case. Defendant's reply is due within 7 days of when Plaintiff's response is filed.

**IV.   Conclusion**

As discussed above, there is significant grey area in this case regarding what is in dispute between the parties. At bottom, the injunctive relief requested in this case turns on the definition of "solicit"–which neither party attempts to define. Nonetheless based on the foregoing, the Court finds that Plaintiff has shown a likelihood of success on the merits, irreparable harm and that the balance of equities tips in its favor that an injunction should issue prohibiting Defendant from soliciting Defendant's former clients as client is defined in the parties' employment agreement. However, the Court notes that Defendant claims he has never solicited any client; therefore, this Order does not prohibit him from doing any behavior he has previously done.

Plaintiff has not shown a likelihood of success regarding its request for a mandatory injunction requiring Defendant to return a client list or compilation of client information because Plaintiff has failed to show (or argue with specificity) that Defendant has any such data in his possession.

Accordingly,

**IT IS ORDERED** that Plaintiff's request for a temporary retraining order (part of Doc. 2) is denied; Plaintiff's request for a preliminary injunction (part of Doc. 2) is granted as follows:

1. Defendant, and all those acting in concert with him, are enjoined and restrained for the duration of this case from: (a) soliciting, or attempting to solicit[6] any JPMorgan client serviced by Defendant at JPMorgan or whose name became known to Defendant by virtue of his employment with JPMorgan (or any of its affiliates or predecessors in interest), excluding only those clients Defendant formally serviced as broker of record at Defendant's prior firm; and (b) using, disclosing or transmitting confidential and proprietary information pertaining JPMorgan's clients for the purpose of soliciting clients as prohibited by (1)(a) herein.

2. This Preliminary Injunction will go into effect upon Plaintiff posting a bond in the amount of $22,000.[7]

3. This preliminary injunction is binding upon Defendant, his agents, servants, employer, any entity with which he is employed or affiliated, and those in active concert or participation with him who receive actual notice of this Order. And,

4. The parties are directed to proceed with arbitration in accordance with Rule 13804 of the FINRA Code of Arbitration Procedure for Industry Disputes.

**IT IS FURTHER ORDERED** that Plaintiff's request to take expedited discovery (part of Doc. 2) is denied.

**IT IS FURTHER ORDERED** that Plaintiff shall respond to Defendant's request to compel arbitration (Doc. 22) within 21 days of this Order. Defendant shall reply within 7 days of the response being filed.

**IT IS FURTHER ORDERED** that Defendant's motion to strike (part of Doc. 18)

---

[6] The Court defines solicit as allowing and disallowing the following. Defendant may speak to clients covered by this injunction in limited circumstances. In speaking with those clients, Defendant may only say where he currently works, and discuss things completely unrelated to work (like the weather). Defendant may not compare his former employer and his current employer or their respective products, volunteer information on why he left, nor ask or encourage the client to move to the new firm. However, if a client, unsolicited, approaches Defendant about continuing to use his services, Defendant does not have to turn the client away.

[7] Neither party suggested a bond amount. The Court selected a bond amount that represents .0001% of the assets Defendant managed for Plaintiff. (Doc. 3 at 2).

- 17 -

is denied.

Dated this 28th day of April, 2023.

_____
James A. Teilborg
Senior United States District Judge